# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORIANA RADWAN, | ) | CIVIL ACTION NO. |
| | ) | |
| *Plaintiff,* | ) | 3:16-CV-02091 |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF CONNECTICUT | ) | |
| BOARD OF TRUSTEES ET AL., | ) | JUNE 26, 2017 |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

COMES NOW the Plaintiff, NORIANA RADWAN, by and through her attorney herein, Gregory J. Tarone, Esq., who makes and files this, her Response to Defendants' Motion to Dismiss, and would respectfully show the Honorable Court as follows:

### BACKGROUND

Because the only issue at this stage of the proceedings is related to service, the Plaintiff will not recount all of the facts underlying this case but will rely on the Complaint in this regard. Regarding the personal service of Defendant Leonard Tsantiris ("Defendant Tsantiris") in his individual capacity, the Plaintiff, proceeding pro se, attempted to serve him personally through her agent for service, private process server Michele VonEisengrein ("VonEisengrein"), on March 17, 2017. VonEisengrein's attempts at service are detailed in her Affidavit, filed with this Court.

1

As stated in the Affidavit, VonEisengrein attempted to serve Defendant Tsantiris personally at his workplace on March 17, 2017. VonEisengrein was informed by the Legal Department at his workplace that Defendant Tsantiris would be out of town on vacation until March 23, 2017. VonEisengrein was not informed specifically on where Defendant Tsantiris could be located while he was "out of town on vacation," nor was she able to determine this information on her own. On March 23, 2017, the day of Defendant Tsantiris's return from vacation, VonEisengrein personally served him at his workplace.

In addition to attempting to serve Defendant Tsantiris personally at his workplace on March 17, VonEisengrein also attempted to obtain Defendant Tsantiris's home address to personally serve him there, or to effect abode service there as permitted by Connecticut General Statutes § 52-57(a). However, after a Google search and personal social media search, as well as having a "skip-trace performed by her office, as set forth in her additional Affidavit of Service of June 26, 2017 annexed hereto as Exhibit "A" to expand further her March 23, 2017 Affidavit of Service, VonEisengrein was unable to determine Defendant Tsantiris's home address. Thus, despite her due diligence, the Plaintiff, through VonEisengrein, was unable to effect abode service upon Defendant Tsantiris.

## STIPULATIONS

The Plaintiff acknowledges that Defendants Manuel, Tsantiris, and Warde in their official capacities are not subject to suit under 42 U.S.C. § 1983. Thus, to the extent that the Complaint may appear to allege Counts Two, Three, and Four against them in their official capacities, the Plaintiff clarifies and stipulates that these counts are brought against Defendants Manuel, Tsantiris, and Warde in their individual capacities only. The Plaintiff also clarifies that the Complaint does not

purport to bring Counts Two, Three, and Four against Defendant University of Connecticut ("UConn") Board of Trustees.

As to Counts Five and Six, the Plaintiff clarifies and stipulates that Counts Five and Six are brought against Defendants Manuel, Tsantiris, and Lucas in their individual capacities only, and the Plaintiff does not object to dismissal of Counts Five and Six as against Defendant UConn while preserving the allegations of Counts Five and Six as against Defendants Manuel, Tsantiris, and Lucas in their individual capacities.

Because there will be no claims remaining against Defendant Manuel in his official capacity, any potential issues with service of Defendant Manuel in his official capacity are moot.

## ARGUMENT

I. **DISMISSAL OF DEFENDANT TSANTIRIS IN HIS INDIVIDUAL CAPACITY IS NOT APPROPRIATE**

The remaining issue is whether dismissal without prejudice against Defendant Tsantiris in his individual capacity is appropriate under Federal Rule of Civil Procedure 4(m). In their Motion to Dismiss, Defendants argue that because Defendant Tsantiris was served in his individual capacity three days after the end of the 90-day time period for service in Rule 4(m) and because they believe there is no good cause for this Court to extend the time for service, the Complaint should be dismissed as to Defendant Tsantiris in his individual capacity. In fact, there is good cause for the very slight delay in serving Defendant Tsantiris for several reasons, and the Court should not dismiss him from this action. Even in the event this Court does not find that there is good cause for the delay, this Court should nonetheless exercise its discretion and grant the Plaintiff an extension of time in which to serve Defendant Tsantiris.

Rule 4(m) requires that service be effected within 90 days of the filing of the complaint. If service is not made within this period, but good cause for the failure is shown, then the court *must* "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *John v. City of Bridgeport*, 309 F.R.D. 149, 153 (D. Conn. 2015). In the absence of good cause shown, the court may still grant an extension. Fed. R. Civ. P. 4(m); *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). Thus, in determining if additional time to serve is warranted, the court undertakes a two-step analysis: first, it determines whether there is good cause for the failure to serve in accordance with the Rules. If there is good cause, the court *must* extend the time for service, and the court does not proceed to the second step of the analysis. If the court finds there is no good cause for the failure, the court proceeds to the second step: deciding if it should exercise its discretion to allow additional time for service despite the lack of good case.

### A.     Standard

This Court set forth the appropriate standards for this two-step analysis in *John*. For the good-cause determination, "[w]hether a plaintiff has shown good cause depends on a weighing of 'plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay.'" 309 F.R.D. at 153 (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., LP*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000)). If a plaintiff has failed to demonstrate good cause, the court may still, in its discretion, grant an extension after "weighing overlapping equitable considerations." *Zapata*, 502 F.3d at 197. Specifically, the court could consider "whether 1) the statute of limitations would prevent plaintiff from refiling, effectively converting the dismissal to dismissal with prejudice; 2) the defendant had actual notice of the claims prior to being served; 3) the defendant tried to conceal the defect in service; and 4) the defendant will be prejudiced if an extension is

4

granted," as well as any other equitable considerations, in determining whether a discretionary extension should be granted. *John*, 309 F.R.D. at 154.

### B. There Is Good Cause For The Delay

In this case, the Plaintiff made reasonable and good-faith efforts to serve Defendant Tsantiris in his individual capacity within the time limit. Before the expiration of the time limit, the Plaintiff's agent for service attempted to serve Defendant Tsantiris personally at his place of work. However, the agent was informed that Defendant Tsantiris was on vacation and would remain on vacation and unavailable for personal service by the agent until after the expiration of the time limit. The Plaintiff's agent served Defendant Tsantiris personally and promptly after his return from vacation, which was three days after the expiration of the time limit. Furthermore, although abode service is allowed, the Plaintiff and her agent for service were unable to effect abode service on Defendant Tsantiris because they were unable to determine Defendant Tsantiris's place of abode. From these facts, it is clear that the Plaintiff made a reasonable, good-faith effort to serve Defendant Tsantiris individually within the allotted time frame, but was unable to do so because of circumstances outside of her control. A good-faith effort to serve within the allotted time frame has been found to justify a slight delay, even when that "slight delay" is months instead of mere days. *See Holmes v. Meleady*, 738 F. Supp. 2d 196, 201 (D. Mass. 2010).

Furthermore, Defendant Tsantiris has not demonstrated any prejudice from the Plaintiff's three-day delay in effecting service. Defendant Tsantiris had actual notice of the lawsuit in a timely manner and has been an active participant in the suit. Defendants allege that allowing the Plaintiff additional time to effect service would "impose an unjust burden on the state"; however, this bare allegation is insufficient to show prejudice, especially as related to the service of Defendant Tsantiris

in his individual capacity. Defendants do not allege that they suffered any harm by the very slight delay in service. Therefore, there is no prejudice against which to weigh the Plaintiff's reasonable efforts at service, and, thus, good cause has been shown for the delay.

Lastly, the Plaintiff was proceeding pro se during the time for service. A pro se plaintiff "deserves special leniency in having her claims decided on the merits." *Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 705 (S.D.N.Y. 2008). Specifically, "pro se plaintiffs should be granted special leniency regarding procedural matters." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). In *Bender*, where the pro se plaintiff had served the defendants by a method that was not permitted—certified mail—the court considered two factors in determining that there was good cause for plaintiff's failure to effect proper service: first, that the plaintiff was proceeding pro se and deserved special leniency, and second, that the defendants "had actual notice of the lawsuit in a timely manner, and have been active participants in the suit from the very beginning." 539 F. Supp. 2d at 705. The court concluded that "the interests of justice would not be served by dismissal of a claim on purely technical grounds." *Id.* Likewise, in this case, the Plaintiff is proceeding pro se and deserves special leniency, and Defendant Tsantiris had actual notice of the lawsuit because he was served in his official capacity and because he received the summons and complaint on March 23, 2017 and has been an active participant in this case. Furthermore, Defendant Tsantiris likely had notice of the claims against him when the time to serve had expired because he was served in his official capacity on March 20, 2017.

Overall, the Plaintiff, a pro se party who deserves special leniency, made reasonable efforts and exercised diligence in attempting to serve Defendant Tsantiris in his individual capacity within the 90-day period set forth in Rule 4(m). Despite her efforts, the Plaintiff was unable to serve him

6

until three days after the expiration of the 90-day period. However, Defendant Tsantiris has not suffered any prejudice from this delay given that it was only three days and that he had timely notice of the litigation. Defendants have not articulated any prejudice that would cut against a finding of good cause, and, thus, this Court should find that there was good cause for the Plaintiff's delay in serving Defendant Tsantiris individually, and it must extend the time for service.

### C. In The Event Good Cause Is Not Found, The Equities Still Favor The Court Granting A Discretionary Extension Of Time To Effect Service

Should this Court find that the Plaintiff has not established good cause for the delay, this Court can nonetheless grant an extension for time for service should the equities favor that. In this case, the Plaintiff's pro se status, the lack of prejudice to Defendant Tsantiris, the extremely brief length of the delay in service, and the fact that Defendant Tsantiris had timely notice of the claims all favor this Court allowing additional time to effect service. As discussed above, Defendants have not alleged that Defendant Tsantiris suffered any specific harm or prejudice as a result of the three-day delay in service. Furthermore, the delay in service was very brief—only three days.

In *John*, the delay was 49 days, which the court characterized as "minor," while noting that as related to the prejudice factor, "any defendant can make a generalized assertion that the passage of time associated with plaintiff's failure to serve will inhibit its ability to put on a defense." 309 F.R.D. at 155. In that case, even though the court found that there was no good cause for the delay, the court nonetheless granted an extension of time for service to be effected. The court concluded that the lack of prejudice favored the plaintiff, as did the fact that some of her claims might be time-barred, while the other two factors favored the defendants. The court then considered the federal policy in favor of resolving cases on their merits and the fact that "although counsel has been

careless, he has not blithely flouted the Court's rules" in determining that it should grant the plaintiff an extension. *Id.* at 156.

In this case, in addition to the lack of prejudice, Defendant Tsantiris had timely notice of the lawsuit because he had been served in his official capacity on March 20, 2017, a factor which favors the Plaintiff. Defendant Tsantiris certainly had notice of the lawsuit on March 23, 2017 when he was personally served. Furthermore, in addition to the federal policy favoring resolution on the merits, the Plaintiff in this case was pro se at the time of service and should be given extra leniency. Lastly, the Plaintiff's minimal delay in service was inadvertent and not done to flout this Court's rules. All told, these factors favor granting the Plaintiff an extension of time in which to serve Defendant Tsantiris in his individual capacity.

## CONCLUSION

The Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss as it relates to service on Defendant Tsantiris individually and grant the Plaintiff an extension of time in which to serve him.

Respectfully submitted,

*/s/ Gregory J. Tarone*
Gregory J. Tarone, Esq.
5020 Route 9W, Suite 104
Newburgh, NY 12550
Telephone: (845) 527-5424
Facsimile: (845) 563-0461
Email: Greg@TaroneEsq.com

Attorney for Plaintiff

EXHIBIT "A"

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORIANA RADWAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIVERSITY OF CONNECTICUT ) <br> BOARD OF TRUSTEES, WARDE ) <br> MANUEL, LEONARD TSANTIRIS, ) <br> and MONA LUCAS, individually and in ) <br> their official capacities, ) <br> ) <br> Defendants. ) | Civil Action No. 3:16-cv-02091-VAB |

**AFFIDAVIT OF MICHELE VONEISDENGREIN**

STATE OF CONNECTICUT    )
                        ) ss:
COUNTY OF HARTFORD      )

MICHELE VONEISENGREIN, being duly sworn, deposes and says:

1. At the time of attempting service of process upon defendant LEONARD TSANTIRIS ("Tsantiris") in his individual capacity in the above-entitled action, I was over the age of eighteen and not a party to this action.

2. On March 17, 2017 at 12:11 pm, I attempted to serve Tsantiris in his individual capacity March 17, 2107 at 12:11 pm personally at his workplace, the Office of Athletics at 2095 Hillside Road, Unit 1078, Storrs Mansfield, CT, 06269.

3. At that time, I inquired in the Legal Office as to the whereabouts of Mr. Tsantiris and

was told his office is in Gampel Pavilion Building on campus. I went to Gampel Pavilion and spoke with a secretary in the reception area of the administrative offices. I was told that Mr. Tsantiris was out of town on vacation and would not be returning to work until March 23rd.

4. I was not informed where specifically Tsantiris was on March 21, 2017, nor was I able to independently ascertain his whereabouts.

5. On March 23, 2017, the day I was told he would return from vacation, I returned to Tsantiris' workplace and personally served him, in his individual capacity, with the Summons, Complaint and Jury Demand with Exhibits, Order on Pretrial Deadlines, Standing Protective Order, and Civil Case Cover Sheet.

6. After personally serving Tsantiris in his individual capacity, I completed a notarized Affidavit of Service, which contained a description of my service and prior attempts at service, as well as a description of Tsantiris.

7. Prior to March 21, 2017, I attempted to ascertain Tsantiris' home address in an effort to effect personal service or abode service upon him there.

8. To ascertain Tsantiris' home address, I did a general Google search for the name Len Tsantiris and looked for a personal social media page, but found none.

9. I also contacted my office and requested a skip-trace on Mr. Tsantiris.

10. Despite these efforts, I was unable to ascertain Tsantiris' home address, and thus I was unable to effect personal service or abode service upon him there.

_____
MICHELE VONEISENGREIN

Sworn to before me on the
26th day of June, 2017

_____
Notary Public

AMY J. CHANTRY
NOTARY PUBLIC
MY COMMISSION EXPIRES
3/31/18