UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NORIANA RADWAN,
    Plaintiff,

v.

UNIVERSITY OF CONNECTICUT BOARD
OF TRUSTEES, WARDE MANUEL,
LEONARD TSANTIRIS AND MONA
LUCAS
    Defendants.

No. 3:16-cv-2091(VAB)

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Noriana Radwan filed this lawsuit *pro se* on December 19, 2016, alleging that the University of Connecticut and several of its employees violated her rights under both federal and state law when they rescinded her athletic scholarship. Defendants now move to partially dismiss the Complaint.

For the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Noriana Radwan ("Plaintiff" or "Radwan") first enrolled at the University of Connecticut ("UConn")[1] in 2014 as a full-time student and recipient of an athletic scholarship to play soccer at the school. Compl. ¶¶ 8, 10-13. Each of the defendants in the present case served a function within UConn's athletic program. Warde Manuel ("Manuel") was the Director of Athletics at UConn. *Id.* ¶ 3. Leonard Tsantiris ("Tsantiris") was the head coach of the women's varsity

---

[1] UConn's Board of Trustees is named as the defendant in this action, sued in its official capacity. *See* Compl., ECF No. 1.

1

soccer team. *Id.* ¶ 4. Mona Lucas ("Lucas") was the Director of Student Financial Aid Services and coordinated the scholarship Radwan received to play for the UConn women's soccer team. *Id.* ¶ 5, 11.

Before her arrival on campus, Radwan alleges she was sent a letter by Lucas offering a "'Full Out-of-State Grant-in-Aid' conditional athletics scholarship." *Id.* ¶ 11. Accompanying the letter was a letter of intent "providing a good-faith commitment to attend" UConn and a contract that would govern the provision of the scholarship. *Id.* ¶¶ 12-13. The contract provided that Radwan would abide by the rules and bylaws set out by the university and the NCAA. *Id.* ¶ 13.

Radwan enrolled in UConn and joined the soccer team. *Id.* ¶ 12. On November 9, 2014, Radwan and the UConn's women's soccer team traveled to Tampa, Florida, to play in the American Athletic Conference ("ACC") Championship. *Id.* ¶ 14. UConn defeated the University of South Florida in penalty kicks, earning an automatic place in the NCAA Division I championship. *Id.* During the celebrations on the field immediately following the victory, Radwan showed her middle finger to a television camera, a gesture broadcast on ESPNU online. *Id.*

Tsantiris later confronted Radwan with a picture of the gesture, allegedly noting that "it was all over the Internet and television." *Id.* ¶ 15. He then allegedly told Radwan that he had to suspend her from all team activities, and prevent her from playing in the NCAA Championship Tournament. *Id.* Tsantiris then issued a press release characterizing Radwan's action as an "obscene gesture." *Id.* ¶ 16. Radwan alleges, however, that she continued to prepare for the 2015-2016 season, with no indication initially that her scholarship would be revoked. *Id.*

On December 19, 2014, Tsantiris allegedly called Radwan and notified her of the cancellation of her scholarship because of the incident in Tampa. *Id.* ¶ 30. On that same call,

Tsantiris allegedly advised her not to attend UConn in the spring. *Id.* ¶ 35. In subsequent calls, Tsantiris allegedly told her she might come back after a semester away from UConn, but that "if she appealed his decision that he would not help her transfer to another school and she would not be given a good recommendation." *Id.* ¶ 37. Radwan then received a letter from Lucas canceling her scholarship. *Id.* ¶ 39.

Radwan alleges that, in the years following UConn's revocation of her scholarship, male student-athletes at UConn have "engaged in similar acts of unsportsmanlike conduct without an affect on their scholarships." *Id.* ¶ 63. She alleges that these incidents were more serious than the one at issue in this case, including:

- A football player who kicked a "dead ball" into the stands in celebration, but was not subject to formal discipline, *id.* ¶¶ 64-65;
- A freshman football player who remained on the team after being involved in a fight, during which five people were injured and the player was charged with third-degree assault and second-degree breach of the peace, *id.* ¶ 68;
- Several basketball players who were initially suspended for violating team rules in a manner "not known to the Plaintiff at this time" but eventually reinstated, *id.* ¶¶ 83-86.
- Several disciplinary incidents involving UConn athletes obtained through a Connecticut Freedom of Information Law request, *id.* ¶¶ 71-73.

She alleges that these incidents demonstrate that "UConn subjected the Plaintiff to a more severe penalty for her Incident than it did for male student-athletes who were believed to have engaged in more serious misconduct . . . ." *Id.* ¶ 87.

Additionally, Radwan alleges that Tsantiris went on a recruiting trip before the incident, and wished to secure the transfer to UConn of another player. *Id.* ¶ 40. She claims that Tsantiris

3

"needed the Plaintiff's grant-in-aid to complete a full out-of-state scholarship offer he wanted to make" and that Radwan's "aid was used to complete" that out-of-state scholarship. *Id.*

Radwan filed the Complaint *pro se,*[2] alleging that UConn had violated Title IX, 20 U.S.C. § 1681. Additionally, she alleged that, under 42 U.S.C. § 1983, defendants Manuel, Tsantiris, and Lucas had violated her First Amendment rights and her equal protection and procedural due process rights. Finally, she alleged two state law claims — breach of contract and negligent infliction of emotional distress — against all defendants.

Defendants move to partially dismiss the Complaint on three separate grounds. Defs. Mem. of Law, ECF No. 13-1 at 1. First, UConn moves to dismiss the constitutional violations and state law claims, invoking Eleventh Amendment immunity. Defs. Mem. at 6-8. Second, Manuel, Tsantiris, and Lucas moves to dismiss the claims brought against them in their official capacity, arguing that, in that capacity, they are not "persons" within the meaning of § 1983. *Id.* at 6-8.

Third, they move to dismiss the Complaint under 12(b)(5) for inadequate service of process. *Id.* at 9-15. They argue that Manuel was never served in his official capacity, and Tsantiris was served three days after the deadline provided by the Federal Rules of Civil Procedure. *Id.* at 13. Therefore, they argue that the Complaint should be dismissed with respect to those two defendants. *Id.* at 15.

## II.  STANDARD OF REVIEW

---

[2] Defendants dispute whether Radwan was truly acting *pro se* when she filed the Complaint. *See* Defs. Mem. at 14. They note that "upon information and belief Attorney Gregory Tarone is providing counsel to the plaintiff," that the Complaint makes numerous allegations related to Attorney Tarone's work, including a request for attorneys' fees, and that the docket shows Attorney Tarone paid the filing fee. *Id.*

4

In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citations omitted).

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, a "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Such allegations must be made through the plaintiff's "own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). In deciding a 12(b)(2) motion to dismiss, a court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in her favor. *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

"Sufficiency of service is a precondition for the court's exercise of jurisdiction over a party and, therefore, constitutes an interrelated ground on which to dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2)." *Carliell v. Am. Inv. Exch., LLC*, No. 3:12-CV-1700 JCH, 2013 WL 4782133, at *2 (D. Conn. Sept. 5, 2013); s*ee also Jackson v. State of Conn. Dep't of Pub. Health*, No. 3:15-CV-750 (CSH), 2016 WL 3460304, at *8 (D. Conn. June 20,

2016) ("In the absence of proper service, a district court lacks personal jurisdiction over those defendants not properly served.").

Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). A motion to dismiss under Rule 12(b)(5) may be granted "if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

## III. DISCUSSION

Defendants move to dismiss the Complaint on several different grounds. They first argue that dismissal of Counts II through IV was appropriate under Fed. R. Civ. P. 12(b)(1) based on UConn's Eleventh Amendment immunity. Defs. Mem. at 1. They argue that UConn cannot be subject to Counts V and VI of the Complaint because state law prohibits suing state agencies. *Id.* at 9. Additionally, they move to dismiss Counts II through VI alleged against Defendants Manuel, Tsantiris, and Lucas in their official capacities. *Id.* at 6-9. Finally, the Court must decide whether Counts II through VI should be dismissed as to Defendant Tsantiris in his individual capacity under 12(b)(5) for insufficient service of process.

### A. Dismissal of Radwan's Official Capacity Claims

In response to Defendants' motion to dismiss, Radwan clarified the claims in her Complaint and conceded that any claims brought against UConn or any specifically named state actor in its or his or her official capacity should be dismissed. Specifically, she indicates that Counts II, III, and IV — those brought under § 1983 — were not brought against UConn or

6

against the other defendants in their official capacities. Instead, she agrees that those counts "are brought against Defendants Manuel, Tsantiris and [Lucas] in their individual capacities only." Pl. Resp. Br. at 2.[3] Additionally, Radwan notes that she "does not object to dismissal of Counts Five and Six," the state law claims, "as against UConn while preserving the allegations of Counts Five and Six as against Defendants Manuel, Tsantiris, and Lucas in their individual capacities." *Id.* at 3.

Based on these concessions, the Court finds that the only remaining claim against UConn is Count I of the Complaint, alleging violations of Title IX. *See, e.g.*, *Abbate v. Cendant Mobility Servs. Corp.*, No. 3:03-cv-1858(DJS), 2004 WL 1431704, at *1 (D. Conn. June 23, 2004) (dismissing two counts where plaintiff conceded the Court lacked jurisdiction). Counts II through VI will proceed against Manuel and Lucas in their individual capacities, as the parties do not dispute that both have received adequate service. Defendants' motion to dismiss the claims against Manuel, Tsantiris, and Lucas in their official capacities and to dismiss Counts V and VI against UConn therefore is **GRANTED**.

  B.  **Untimely Service of Process**

The Court still must address the timeliness of the service of process on Tsantiris. Tsantiris argues that the Complaint should be dismissed because he "in his individual capacity was served the complaint three days after the expiration of the 90-day time period required by Rule 4(m)." Defs. Mem. at 12. Therefore, he argues that service was inadequate and — because he argues that Radwan cannot demonstrate good cause for the untimely service — the Complaint should be dismissed. *Id.* at 13-14. The Court disagrees.

---

[3] Plaintiff's Response Brief mislabels the parties as "Defendants Manuel, Tsantiris, and Warde." Pl. Resp. Br. at 2. Subsequent reference, however, makes it clear that Plaintiff intended to reference Mona Lucas. *Id.* at 3 (listing defendants as Manuel, Tsantiris and Lucas).

7

Service of process is governed by Federal Rule of Civil Procedure 4. Rule 4 provides, in relevant part, that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A plaintiff may serve an individual defendant by "following state law for serving a summons" in state courts, serving the individual personally, leaving a copy at the individual's dwelling or usual place of abode, or delivering the documents to an agent. Fed. R. Civ. P. 4(e)(2).

Radwan served Tsantiris personally, as prescribed in Fed. R. Civ. P. 4(e)(2)(A). She acknowledges, however, that the service of process was untimely. *See* Pl. Resp. Br. at 3 (noting defendants' argument and stating that "there is good cause for the very slight delay in serving Defendant Tsantiris for several reasons . . . ."). The motion to dismiss therefore should be granted, unless Radwan can either show good cause or that, within the Court's discretion, she merits an extension of time to effect service beyond the Rule 4(m) "window." *John v. City of Bridgeport et al*, 309 F.R.D. 149, 153-54 (D. Conn 2015); *see also Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) (noting that Rule 4(m) requires district courts to extend the time for service if good cause is shown and holding that "district courts have discretion to grant extensions even in the absence of good cause").

Courts in the Second Circuit weigh two factors when deciding if a plaintiff has demonstrated good cause under Fed. R. Civ. P. 4(m): "plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay." *John*, 309 F.R.D. at 153 (*quoting AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., LP*, 197 F.R.D. 104, 108 (S.D. N.Y. 2000); *see also Husowitz v. Am. Postal Workers Union*, 190 F.R.D. 53, 57 (E.D.N.Y. 1999) ("The

8

following two factors are relevant in a Court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay."). The weighing of both factors result in the Court finding good cause.

1. **Plaintiff's Efforts at Service**

Radwan argues that she made reasonable efforts to adequately serve Tsantiris in his individual capacity. *See* Pl. Resp. Br. at 5. She submitted an affidavit from a process server, stating that she had attempted to serve Tsantiris personally at his place of work before the deadline had elapsed, but was informed that he was on vacation and would not return until three days after the deadline for service under Rule 4(m) had passed. Affidavit of Michele Voneisdengrein ("Voneisdengrein Aff."), Ex. A, Pl. Resp. Br. Once he returned, the process server immediately returned to the office and provided service. *Id.* ¶ 5.

Tsantiris argues that Conn Gen. Stat. "§ 52-57 permits abode service of a summons and complaint upon a defendant in his individual capacity." Defs. Mem. at 13. Indeed, abode service is also one of ways to provide service under the Federal Rules as well. Fed. R. Civ. P. 4(e)(2).

Radwan argues, however, that she was unable to determine where Tsantiris lived: "although abode service is allowed, the Plaintiff and her agent for service was unable to effect abode service on Defendant Tsantiris because they were unable to determine Defendant Tsantiris's place of abode." Pl. Resp. Br. at 5. In the affidavit submitted along with Radwan's brief, the process server describes her methods for finding Tsantiris's place of abode. *See* Voneisdengrein Aff. ¶¶ 7-10. She states that she performed a Google search for his name and looked for a personal social media account; upon finding none, she requested a "skip-trace on Mr. Tsantiris." *Id.* She reports, however, that she "was unable to ascertain Tsantiris' home address." *Id.*

9

Given these efforts, the Court finds that Radwan made reasonable efforts to adequately serve Tsantiris before the period for service expired.

### 2. Prejudice to Defendant

Radwan argues that "Defendants have not alleged that Defendant Tsantiris suffered any specific harm or prejudice as a result of the three-day delay in service." Pl. Resp. Br. at 7. The Court agrees.

Defendants do not address how Defendant Tsantiris would face prejudice directly and instead argue that regularly granting discretionary extensions of time to effectuate service "would impose an unjust burden on the state. As it relates to suits against state employees in their official capacities, it would be difficult, if not impossible, for the state to keep track of suits against it if plaintiffs were allowed to choose their own method of service." Defs. Mem. of Law at 14-15.

This Court recognizes that "any defendant can make a generalized assertion that the passage of time associated with plaintiff's failure to serve will inhibit its ability to put on a defense." *John*, 309 F.R.D. at 155. Courts in this District, however, have required defendants to demonstrate specifically how they have been prejudiced by a slight delay in service in assessing whether a finding of good cause is warranted. *See, e.g.*, *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, No. 3:09-CV-1037 (JCH), 2010 WL 2977143, at *3 (D. Conn. July 21, 2010) (finding no prejudice to defendants for three-day delay and granting good cause extension); *Taylor v. Alcohol & Drug Recovery Ctr., Inc.*, No. 3:10-CV-0319 RNC, 2011 WL 4368432, at *1 n.1 (D. Conn. July 27, 2011), *report and recommendation adopted*, No. 3:10-CV-319 RNC, 2011 WL 4368696 (D. Conn. Sept. 19, 2011) ("Because the plaintiff reasonably relied on the U.S. Marshal and because there is no indication that the defendant was prejudiced by being

served five days late, there was good cause for the untimely service of process."). As a result, Tsantiris's arguments here fall short of demonstrating any prejudice by the very slight delay in service.

### 3. Extension of Time *Nunc Pro Tunc*

Weighing both considerations, the Court finds that Radwan has demonstrated good cause for the untimely service regarding Tsantiris. First, she made reasonable efforts to serve Tsantiris during the time period provided by under the Federal Rules, once at his office and by unsuccessfully trying to ascertain his address. Second, the very brief delay in service makes it unlikely that Tsantiris would suffer prejudice, and Tsantiris has not identified any specific prejudice caused by this delay unique to his personal circumstances.

The Court therefore will extend the period of time for service on Tsantiris *nunc pro tunc* to three days after the applicable 90-day period. Accordingly, Defendants' motion to dismiss for inadequate service of process is denied.

## CONCLUSION

Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

Count I of the Complaint will proceed against Defendant UConn. Counts II through VI will proceed against Defendants Manuel, Tsantiris, and Lucas in their individual capacities only. Any claims against Manuel, Tsantiris, and Lucas in their official capacities are dismissed, as are Counts V and VI with respect to Defendant UConn.

SO ORDERED at Bridgeport, Connecticut, this 14th day of December, 2017.

      /s/ Victor A. Bolden
    Victor A. Bolden
    United States District Judge