UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORIANA RADWAN, | : |
| Plaintiff, | : |
| VS. | : Civil Action No. 3:16-cv-02091 (VAB) |
| UNIVERSITY OF CONNECTICUT BOARD OF TRUSTEES, WARDE MANUEL, LEONARD TSANTIRIS, and MONA LUCAS, individually, | : : : |
| Defendants. | : December 23, 2019 |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II, III AND IV

By motion dated December 23, 2019, Noriana Radwan (the "Plaintiff"), cross-moved for summary judgment on Counts II, III and IV of her Complaint. The Plaintiff hereby respectfully submits this Memorandum of Law in Support of her Cross-Motion for Summary Judgment, and the accompanying Local Rule 56(a)1 Statement.

I. Procedural Posture

This civil action was commenced by the Plaintiff by her Complaint filed on December 19, 2016 (Doc. No. 1). The Defendants are the University of Connecticut Board of Trustees ("UConn"), Warde Manuel ("Manuel"), who at the time was the Athletic Director of UConn, Leonard [sic[1]] Tsantiris ("Tsantiris"), who at the time was the Head Coach of the UConn women's soccer team, and Mona Lucas ("Lucas"), who at

---

[1] The Plaintiff discovered during the course of this action that the first name of Tsantiris, who is known as "Len", is actually "Leonidas."

1

the time was UConn's Director of Financial Aid Services.[2]  The operative counts of the Complaint, following the Court's ruling on the Defendants' motion to dismiss on December 14, 2017, (Doc. No. 29) are:

<u>Count I</u> - Violation of Title IX, 20 U.S.C. § 1681, <u>et seq</u>., and regulations promulgated thereunder, against UConn, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.  The Plaintiff claims that UConn discriminated against her as a female student-athlete by subjecting her to more severe penalties than it did, and does, for male-student athletes - particularly male members of UConn's high-profile men's basketball and football teams - who have engaged in more serious misconduct, be it unsportsmanlike conduct during a game, violations of team rules on or off the playing field, and even criminal acts.

<u>Count II</u> - Violation of the Plaintiff's right to equal protection of the law under the 14th Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against the individual Defendants, Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.  The Plaintiff claims that the individual Defendants, being state actors as employees and officials of a state university, violated her right to equal protection under the law by subjecting her, as a female student-athlete, to more stringent disciplinary standards and to harsher disciplinary sanctions than male student-athletes at UConn who engage in unsportsmanlike conduct and far more serious misconduct.

---

[2] Manuel, Tsantiris and Lucas are sued in their individual capacities.  The Court earlier dismissed Counts II, III, IV, V and VI against them in their official capacities.  (Doc. No. 29.)

Count III - Violation of the Plaintiff's right to procedural due process under the 14th Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against the individual Defendants, Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.  The Plaintiff claims that the individual Defendants, being state actors as employees and officials of a state university, violated her right to procedural due process by failing to follow the procedural rules prescribed by the NCAA in that they did not pursue the termination of her student-athlete grant-in-aid through the regular student disciplinary authority at UConn and deprived her of a hearing by not properly informing her of the deadline for requesting a hearing and/or denying her a hearing regardless of the timeliness of her request, contrary to the procedures followed by the regular student disciplinary authority at UConn.

Count IV - Violation of the Plaintiff's right of free speech under the First Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against the individual Defendants, Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988. The Plaintiff claims that an upraised middle finger gesture is projected free speech and that the Defendants, being state actors as employees and officials of a state university, violated her right of free speech by terminating her student-athlete grant-in-aid for having exercised that right.

Count V - Breach of contract, against the individual Defendants, Manuel, Tsantiris

and Lucas relating to the Plaintiff's full athletic grant-in-aid (scholarship) with UConn.[3]

Count VI - Negligent infliction of emotional distress, against the individual Defendants, Manuel, Tsantiris and Lucas. The Plaintiff's claim is a "garden variety" emotional distress claim, which is compensable even though she has not sought psychiatric or psychological treatment for her emotional distress.

The Defendants moved for summary judgment on November 1, 2019. On December 23, 2019, the Plaintiff filed a memorandum of law in opposition to that motion, and a cross-motion for summary judgment on Counts II, III and IV of her Complaint and now file this memorandum of law in support of her cross-motion.

II. Factual Background

The facts of this case are the material facts as to which the Plaintiff contends there is no genuine issue to be tried, which are set forth in the Plaintiff's accompanying Local Rule 56(a)1 Statement, so they are not repeated here at length. To summarize, however, this case arises out of an incident which transpired over the course of a fraction of a second during a post-game, on-field victory celebration by the UConn women's soccer team immediately after it won the American Athletic Conference championship game on November 9, 2014. In a moment of youthful, celebratory exuberance, the Plaintiff, then an 18-year-old freshman on the UConn team, made a gesture with her upraised middle finger, directed at no one in particular, but the gesture

---

[3] In all candor with the Court, counsel for the Plaintiff concedes that since the breach of contract claim survived the motion to dismiss only as against the three individual defendants, this claim is not viable against those defendants as they were not parties to the contract with the Plaintiff. Accordingly, the Plaintiff must, and does, abandon Count V.

4

happened to be captured by a live ESPNU television camera.[4] Upon realizing she was on camera, the Plaintiff immediately lowered her hand and converted the gesture to a "peace" or "victory" sign.

Tsantiris was made aware of the live television broadcast of the Plaintiff's gesture while he was still on the field, and immediately suspended the Plaintiff from all team activities, including the NCAA Division I championship tournament. Despite the Plaintiff's immediate oral apology and prompt written apology to the coaching staff and Manuel, and Manuel's oral assurance to the Plaintiff, in person, that he had no intention of "pulling" her scholarship as a result of the incident, and despite Tsantiris' discussion with the Plaintiff on December 3, 2014 of his expectations of her as a player in the spring 2015 semester, Tsantiris called the Plaintiff on December 19, 2014 and informed her that she had been dismissed from the team and that her full athletic grant-in-aid, i.e., her scholarship, had been canceled. Tsantiris told the Plaintiff a few days later that he would help her transfer to another school, but that if she appealed the cancellation of her athletic grant-in-aid, he would neither help her nor give her a good recommendation.

On December 24, 2014, the Plaintiff received a letter from Lucas, dated December 22, 2014, formally informing her that her scholarship had been canceled for "serious misconduct", citing an NCAA bylaw, even though the term "serious misconduct" is not defined in either the NCAA bylaws or the UConn Student Code. Lucas informed her that she had 14 "business days" from her receipt of the letter to appeal that decision

---

[4] Plaintiff's Ex. B, the ESPNU broadcast video footage of the game, including the post-game celebration and the gesture itself at the 2 hour, 54 minute and 12 second mark, has been provided to the Court on a flash drive.

by requesting a hearing in writing, but did not explain which days around the Christmas and New Year's holidays were "business days." The failure of Lucas to identify the specific deadline for requesting a hearing violated an NCAA bylaw. The Plaintiff appealed by requesting a hearing on January 14, 2015, believing that her request was timely, but was then informed by Lucas that the appeal period had expired one day earlier, 14 "business days" after the date of the letter, and denied the Plaintiff a hearing. Consequently, the Plaintiff, unable to afford to remain at UConn, had to disenroll from UConn, vacate student housing and transfer to another school, Hofstra University, where she was only able to obtain a partial athletic grant-in-aid.

III. <u>Argument</u>

    A. <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Id.</u>, at 255. While the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, when a motion for

summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of her pleadings, but must present significant probative evidence to establish a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 327 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

    B.  Count II

Count II alleges a violation of the Plaintiff's rights to equal protection of the law under the 14th Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against the individual Defendants, Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.

"Two elements are required to state a claim under 42 U.S.C. § 1983: (1) the defendants acted under color of state law and (2) their action deprived the plaintiff of some right, privilege or immunity secured by the Constitution or laws of the United States. Powell v. Workmen's Compensation Board of State of New York, 327 F.2d 131, 136 (2d Cir. 1964); Bergman v. Stein, 404 F.Supp. 287, 295 (S.D.N.Y.1975)." Reilly v. Leonard, 459 F. Supp. 291, 296 (D. Conn. 1978) (footnote omitted).

"State employees act under the color of state law when they act (1) in their official capacity 'clothed with the authority of state law,' or (2) 'under "pretense" of law' by purporting to act with official sanction. Sazon Inc. v. New York, No. 11–CV–3666, 2011 WL 5910171, at *4 (S.D.N.Y. Nov. 28, 2011) (quoting West v. Atkins, 487 U.S. 42,

49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)); accord Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 88 (2d Cir.2015). Even employees that 'misuse [ ]' authority (for example, by exceeding it) act under the color of state law, so long as they 'carry a badge of authority of a State and represent it in some capacity.' National Collegiate Athletic Association v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988); accord Gleason v. Scoppetta, 566 Fed.Appx. 65, 69 (2d Cir.2014); Sazon, 2011 WL 5910171, at *3. Only purely private conduct and 'acts of officers in the ambit of their personal pursuits' are beyond Section 1983's reach. Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir.1997)." Louis v. Metro. Transit Auth., 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015).

The Plaintiff claims that the individual Defendants violated her right to equal protection under the law by subjecting her, as a female student-athlete, to more stringent disciplinary standards and to harsher disciplinary sanctions than male student-athletes at UConn who engage in unsportsmanlike conduct or far more serious misconduct. As for the first element of the Plaintiff's 42 U.S.C. § 1983 claim, Manuel, Tsantiris and Lucas, as employees and officials of a state university, are unquestionably state actors who are exposed to liability to the Plaintiff under her equal protection claim.

> The Supreme Court has recognized that an individual is acting under color of state law when exercising power " 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " Polk County v. Dodson, 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)); see also West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). As a general rule, " 'state

8

> employment is ... sufficient to render the defendant a state actor.' "
> West, 487 U.S. at 49, 108 S.Ct. 2250 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 n. 18, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

Hayut v. State University of New York, 352 F.3d 733, 744 (2d Cir. 2003). The Defendants do not claim otherwise. Even though the Defendants are being sued in their individual capacities, they acted under a badge of state authority and were not engaged in purely private conduct. The element of acting under color of state law is satisfied.

The personal involvement of the individual Defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 for a violation of the Equal Protection clause of the Constitution. Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir.2009); Raspardo v. Carlone, 770 F.3d 97, 125 (2d Cir. 2014). Under the facts of this case, the Defendants did have the requisite personal involvement.

Pursuant to 2013-14 NCAA Division I Manual, Bylaw 15.3.4.2.4, "An institution may cancel or reduce the financial aid of a student-athlete who is <u>found to have engaged in misconduct by the university's regular student disciplinary authority</u>...." (Emphasis added.) Cocks, in her capacity as UConn's Director of Community Standards, not Manuel, was UConn's regular student disciplinary authority. Manuel wrongfully took it upon himself to be the final decision-maker who terminated the Plaintiff's athletic grant-in-aid, despite the fact that he had no such authority. Indeed, Manuel's circumventing or ignoring UConn's regular student disciplinary authority was systemic, as Cocks, in her nearly 14 years as UConn's regular student

9

disciplinary authority, was never been involved with any cases in which a student athlete's grant-in-aid was terminated, and was never asked by the Athletic Director for her advice or guidance on how to handle a disciplinary matter. (Plaintiff's Rule 56(a)2 AMF, No. 42.)

Lucas was personally involved in depriving the Plaintiff of the opportunity to appeal the cancelation of her full scholarship. After all, it was Lucas who made the determination to deny plaintiff's hearing request. (Def.'s Ex. 49 Lucas Depo. p. 74:1-8.) That was critical, because if the proper disciplinary procedures had been followed, Cocks would have granted the Plaintiff a hearing, whether she requested it a day late or not at all. (Plaintff's Rule 56(a)2 AMF No. 45.) The same is true of Tsantiris, whose personal involvement consisted of recommending to Manuel that he terminate the Plaintiff's athletic grant-in-aid and his effort to chill her exercise of her right to a hearing by threatening the Plaintiff that if she appealed the decision to cancel her full scholarship, he would neither help her transfer to another school nor give her a good recommendation.

C. <u>Count III</u>

In Count III, the Plaintiff alleges a violation of her right to procedural due process under the 14th Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.

> The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'

10

> interests within the meaning of the Due Process Clause of the ... Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). … Furthermore, a defendant in a § 1983 action may not be held liable for damages absent personal involvement in the alleged constitutional deprivation. Victory v. Pataki, 814 F.3d 47, 67 (2d Cir.2016), as amended, (Feb. 24, 2016).

Devecchis v. Scalora, 179 F. Supp. 3d 208, 218-19 (D. Conn. 2016) (Bolden, U.S.D.J.).

The Plaintiff's athletic grant-in-aid was for the entire 2014-15 academic year, but it was terminated midway through that year, at the end of the Fall 2014 semester. "There is some indication in the caselaw that the continued maintenance of a[n athletic] scholarship may in some circumstances constitute a constitutionally protected property interest. See Parish v. NCAA, supra, [506 F.2d 1028] at 1034 n. 17 [(5th Cir. 1975)]; Colorado Seminary v. NCAA, 417 F.Supp. 885, 895 (D.Colo. 1976)." Fluitt v. Univ. of Nebraska, 489 F. Supp. 1194, 1203, n. 5 (D. Neb. 1980). In Fluitt, the court indicated that terminating an existing athletic grant-in-aid, as distinguished from not offering a subsequent athletic grant-in-aid for the next academic year, is a constitutionally protected property interest. Id., at 1203. Similarly, in Colorado Seminary, the Court, in dictum, stated, "the Court might agree that the deprivation of a previously granted scholarship would invoke the protections of procedural due process Colorado Seminary, at 895, aff'd, 570 F.2d 320 (10th Cir. 1978).[5] In Heike v. Guevara, 519 F. App'x 911, 917, 924 (6th Cir. 2013), the District Court assumed, and the Court of Appeals for the 6th Circuit agreed, that the plaintiff, a basketball player at Central Michigan University, had a protected property interest in her existing athletic grant-in-aid sufficient to satisfy

---

[5] The court found, in footnote 5, no legal entitlement to actually play, or protected property interest in actually playing, in competition but that is not an issue in the case at bar.

the second element of a claim under 42 U.S.C. § 1983 for violation of her procedural due process rights, (but then held that she had been given enough process at an administrative hearing to satisfy the Due Process clause).

The Defendants assert that the "custom and practice of UConn Athletic Department when a student-athlete's athletic grant-in-aid is cancelled for disciplinary reasons (under both AD Manuel and AD Benedict) is that the student's coach makes a recommendation to the team's assigned sport administrator and then the recommendation is brought to the athletic director for final decision. [SOF ¶¶ 53, 152] Only if the athletic director agrees with the coach's rationale for cancelling athletic grant-in-aid for disciplinary reasons is the final decision made to cancel aid. [SOF ¶¶ 53, 152]." This statement evinces a fundamental disregard and misapplication by the Defendants of the disciplinary regimen prescribed by the bylaws of the NCAA to which they are bound to adhere.

The Plaintiff's right to procedural due process went off the rails when Manuel, in concert with Tsantiris and Lucas, completely bypassed Catherine Cocks, UConn's regular student disciplinary authority, who knew nothing of the plan or process implemented by the individual Defendants to terminate the Plaintiff's athletic grant-in-aid over an incident which was minor compared to the misconduct of other student-athletes who got their wrists slapped. Had Cocks been made aware of the incident, she would have done nothing about it, recognizing it for what it was - protected free speech and not a violation of the Student Code. Cocks does not recall ever having a disciplinary matter referred to the Department of Community Standards based on someone making

an obscene gesture.

Manuel started the chain of events which deprived the Plaintiff of procedural due process when he wrongfully took it upon himself to be the final decision-maker who terminated her athletic grant-in-aid, despite the fact that he had no such authority. Cocks, in her capacity as UConn's Director of Community Standards, not Manuel, was UConn's regular student disciplinary authority. Pursuant to 2013-14 NCAA Division I Manual, Bylaw 15.3.4.2.4, "An institution may cancel or reduce the financial aid of a student-athlete who is <u>found to have engaged in misconduct by the university's regular student disciplinary authority</u>...." (Emphasis added.) Manuel held the ball, so to speak, and never handed it off to Cocks as he should have.

Neither Cocks nor anyone in her Department of Community Standards ever conducted any kind of investigation of allegations of misconduct against the Plaintiff. Cocks never saw, and was not copied on, the letter from Lucas to the Plaintiff, dated December 22, 2014 notifying the Plaintiff that her grant-in-aid had been terminated and advising her of her right to a hearing to contest that decision.

Indeed, Manuel's circumventing or ignoring UConn's regular student disciplinary authority was systemic, as Cocks, in her nearly 14 years as UConn's regular student disciplinary authority, was never been involved with any cases in which a student athlete's grant-in-aid was terminated, and was never asked by the Athletic Director for her advice or guidance on how to handle a disciplinary matter. His personal involvement in depriving the Plaintiff of procedural due process is evident, as is the personal involvement of Tsantiris and Lucas which as been described above.

D. Count IV

In Count IV, the Plaintiff alleges a violation of the Plaintiff's right of free speech under the First Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, against the individual Defendants, Manuel, Tsantiris and Lucas, including a claim for reasonable attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988.

Retaliation by a state actor against a person for making an angry and intentionally offensive "obscene gesture" is a "serious First Amendment violation." Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990), cited in Hogan v. City of New York, No. 04CV3298JFBSMG, 2007 WL 9710294, at *11 (E.D.N.Y. Mar. 12, 2007). "Retaliation based on the exercise of First Amendment rights has long been recognized as a basis for liability under § 1983. Albeit in a different context, the Eighth Circuit has remarked that '[n]o right is more clearly established in our republic than freedom of speech.' Casey v. City of Cabool, 12 F.3d 799, 804 (8th Cir.1993) (§ 1983 First Amendment retaliatory discharge case)." Nichols v. Chacon, 110 F. Supp. 2d 1099, 1103 (W.D. Ark. 2000), aff'd, 19 F. App'x 471 (8th Cir. 2001).

"[A] citizen who raises her middle finger engages in speech protected by the First Amendment." Cruise-Gulyas v. Minard, 918 F.3d 494, 497 (6th Cir.), cert. denied, 140 S. Ct. 116 (2019). In Nichols v. Chacon, Nichols, a motorist, intentionally directed a gesture of his upraised middle finger at a passing state trooper' a gesture "commonly referred to as 'flipping someone off,' 'the bird,' or 'giving someone the finger' [and is] understood ... to mean 'f___ you.' " Id., at 1101. The offender told the trooper that he

did not mean to direct it at him; that he thought the trooper was another trooper who had removed his name from a list of wrecking services to be called in emergencies. After his acquittal on a charge of disorderly conduct, Nichols sued the trooper under 42 U.S.C. § 1983 for violating his constitutionally protected right of free speech under the First Amendment to the United States Constitution (as well as the Fourth and Fourteenth Amendments). Even though Nichols conceded that his gesture was disrespectful and ill advised, and the court cited cases describing the gesture as boorish, tasteless, offensive, disturbing and crude, its was not even a close case - the gesture was found to be protected free speech.

> In general, expressive conduct is protected from government regulation under the First and Fourteenth Amendments. As has oft been said, "even crudity of expression may be constitutionally protected." State v. Drake, 325 A.2d 52, 54 (Me.1974) (citing Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973)).
>
> Gesturing in the manner described in this case has a commonly understood meaning and connotation. The impact of the gesture was as effective as spoken words in getting Nichols' message across. Without a doubt, the gesture was communicative conduct and is analyzed just as if Nichols had spoken the words "f___ you." Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir.1997) ( "Nonverbal conduct constitutes speech if it is intended to convey a particularized message and the likelihood is great that the message will be understood by those who view it, regardless of whether it is actually understood in a particular instance in such a way.") (citation omitted).
>
> "Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949). Pure speech is protected unless the words, by their utterance alone, inflict injury or tend to evoke immediate violence or other breach of the peace. Gooding v. Wilson, 405 U.S. 518, 525, 92 S.Ct. 1103, 31 L.Ed.2d 408

(1972). Such "fighting words" are not protected. City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 2511 n. 12, 96 L.Ed.2d 398 (1987).

Nichols v. Chacon, at 1103–04.

Even if the Defendants acted against the Plaintiff without understanding the constitutionality of her upraised middle finger gesture, they cannot avoid liability for infringing the First Amendment rights of the Plaintiff by retaliating against her as they did. " '[S]tate employees may not rely on their ignorance of even the most esoteric aspects of the law to deny individuals their [constitutional] rights.' " Long, 929 F.2d at 1115 (quoting Wentz v. Klecker, 721 F.2d 244 (8th Cir.1983))." Nichols, at 1108-09.

An inadvertently upraised middle finger gesture is every bit as expressive as an intentionally upraised middle finger gesture. Someone seeing the upraised finger will draw the conclusion that the message conveyed was an offensive one, regardless of whether the gesture was made intentionally or inadvertently. In fact, in the case at bar, UConn and the ACC drew the conclusion that the expression conveyed by the gesture was offensive and obscene, completely without regard for the Plaintiff's intention or inadvertence in making the gesture. The inadvertence of the Plaintiff's gesture did nothing to dilute its meaning as to render it something less than speech. If it had, there would have been no reason for the Defendants to take the position that it constituted serious misconduct justifying the draconian discipline they meted out.

In the eyes of the beholder, an upraised finger conveys an offensive meaning regardless of the intention or inadvertence of the person making the gesture. It is no different from a situation in which someone mutters something offensive to himself under his breath, without intending for anyone to hear it, but it is picked up by an open

16

microphone and broadcast publicly.  Surely, it is expressive speech.  As such, the Plaintiff's gesture was expressive conduct entitled to the First Amendment's protection of free speech.  Canceling the Plaintiff's athletic grant-in-aid for making a gesture with her upraised middle finger, directed at no one in particular, in a moment of youthful, celebratory exuberance after a victory in a soccer game, constituted retaliation that certainly infringed her right of free speech.

IV.  Conclusion

The absence of genuine issues of material fact with respect to Counts II, III and IV, coupled with the law governing the causes of action for violation of her rights to equal protection of the law, procedural due process and free speech militate in favor of granting the Plaintiff's motion for summary judgment.  The Plaintiff respectfully submits that her motion for summary judgment on Counts II, III and IV of the Complaint ought to be granted.

>The Plaintiff, NORIANA RADWAN
>
>By: /s/   Jonathan J. Klein
>Jonathan J. Klein (ct00513)
>60 Lyon Terrace
>Bridgeport, Connecticut  06604
>Phone:  (203) 330-1900
>Fax:  (203) 330-1526
>E-mail:  jjkesq@hotmail.com
>
>- and -

By: /s/ Gregory J. Tarone
Gregory J. Tarone, Esq. (ct30272)
5020 Route 9W, Suite 104
Newburgh, NY 12550
Phone: (845) 527-5424
Fax: (845) 563-0461
Email: Greg@TaroneEsq.com
Her Attorney

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019, a copy of the foregoing Plaintiff's Memorandum of Law in Support of her Cross-Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Jonathan J. Klein
Jonathan J. Klein